PAUL V. RILEY, JR., PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 10896–76.     Filed May 27, 1980.

Paul V. Riley, Jr., pro se.
*Sergio Garcia-Pages,* for the respondent.

TANNENWALD, *Judge:* Respondent determined deficiencies in
petitioner's Federal income taxes for the years 1973 and 1974 in
the amounts of $1,311 and $2,373.68, respectively. The issues
for decision are (1) whether petitioner was a bona fide resident
of Canada during the taxable years in question and may,
therefore, exclude from gross income under section 911(a)(1)[1] his
earnings as a teacher in Canada during those years, and (2) if
not, whether amounts expended by petitioner for food and
lodging in Canada are deductible under section 162(a)(2) as
traveling expenses incurred while away from home in pursuit of
a trade or business.

### FINDINGS OF FACT

Some of the facts are stipulated. The stipulations of facts,
together with the exhibits attached thereto, are incorporated
herein by this reference.

---

[1]All section references are to the Internal Revenue Code of 1954, as amended and in effect in
the taxable years at issue, unless otherwise indicated.

Petitioner Paul V. Riley, a citizen of the United States, was a resident of West Chester, Pa., at the time he filed the petition herein. He filed his 1973 Federal income tax return with the Internal Revenue Service Center, Philadelphia, Pa., and his 1974 return with the Office of International Operations, Service Branch, in Washington, D.C. His filing status on those returns was "married filing separately."

From January 1969 to July 1972, petitioner was a graduate student in world religions at Temple University in Philadelphia. In February 1972, petitioner enrolled as a Ph.D. candidate in the religion program at Temple University. He resigned from that program in December 1976.

Petitioner was employed as a "Child Care III Worker" at Wiley House in Bethlehem, Pa., from May 1972 to December 1972. Thereafter, from January 1973 to April 1973, petitioner was a substitute teacher in the Centennial School District, Warminster, Pa.

While petitioner was a graduate student at Temple University from January 1969 to July 1972, he resided with his wife at 1940 N. Broad Street in Philadelphia. From July 1972 until April 1973, petitioner and his wife resided at 129 Centennial Road in Warminster, Pa.

In April 1972, petitioner met the head of the Department of Religious Studies of Memorial University of Newfoundland (hereinafter Memorial), St. John's, Newfoundland, Canada. Petitioner indicated to him that he was not, at that time, interested in being considered for a teaching appointment at Memorial because he was pursuing his doctorate degree at Temple University. After petitioner and his wife visited Memorial in October 1972, however, petitioner accepted an appointment as a lecturer in the department of religious studies at Memorial at a salary of $11,000 per year, beginning September 1, 1973. Petitioner was obligated to teach any two of the three semesters in the academic year. His appointment was provisional, i.e., untenured, and was for a period of 2 years, subject to renewal. Subsequently, petitioner agreed to start teaching on May 1, 1973, 4 months earlier than he had originally agreed.

On April 25, 1973, petitioner left his job in Warminster, separated from his wife, and departed from their residence in Warminster to which he never returned. His wife moved to a new address. He took with him all of his possessions, including

an automobile and utility trailer. His library, consisting of 19 crates of books, was shipped to Newfoundland in advance of his departure from the United States. Petitioner crossed from the United States into Canada on April 26, 1973.

Petitioner's wife remained in the United States. Petitioner and his wife were subsequently divorced pursuant to proceedings which terminated in January 1978.

Petitioner entered Canada under a 1-year nonimmigrant employment visa, renewable annually. Petitioner renewed the visa for another year upon its expiration in April 1974. On his original visa, petitioner signed a statement to the effect that he was applying "for permission to work in Canada as a nonresident."

For the first month after his arrival in St. John's, Newfoundland, petitioner lived in a university dormitory. From June 1, 1973, through October 31, 1973, petitioner lived in an apartment in St. John's. He then moved to an outlying community of St. John's, The Goulds, where he remained until April 30, 1974. Thereafter, he returned to St. John's and lived in an apartment under an annual rent contract covering the period May 1, 1974, to April 30, 1975. Petitioner left that apartment to return to the United States 6 days before the expiration date of that contract.

Petitioner made several friends in the town and university communities in St. John's. He served as vice president of the Newfoundland Epilepsy Association and was a member of the Consumers' Association of Canada, the Record Club of Canada, St. John's Orienteering Club, and, in 1974, Oxfam Canada, a charitable organization. He also belonged to Memorial's Faculty Association, where he served on the membership committee, the Memorial Faculty Staff Club, and the Memorial Judo Club. Petitioner took a course at Memorial from January 1975 to April 1975.

Petitioner performed services for the Canadian Broadcasting Co. in St. John's, Newfoundland, on September 24, 1973, and received $48.80 as compensation.

Petitioner subscribed to three Canadian publications while in Canada—Canadian Consumer, Time Magazine (Canada), and Reader's Digest of Canada—while continuing his subscriptions to several U.S. publications. Petitioner had a Canadian social insurance card.

While in Canada, petitioner had a provincial driver's license

and provincial vehicle registrations and licenses for his automobile and trailer. From April 20, 1973, to April 20, 1974, petitioner carried a Canadian nonresident motor vehicle liability insurance card. From June 6, 1974, until his departure, he carried a similar card which made no reference to his residency. In compliance with Canadian law, he twice had his automobile inspected for fitness.

In the summer of 1974, after petitioner's teaching was evaluated by the department of religious studies, petitioner was informed that his contract would not be renewed upon its expiration on August 31, 1975, and that no recommendations would be issued on his behalf unless he submitted his resignation. Petitioner resigned his post by a letter dated September 30, 1974, effective August 31, 1975. His resignation was accepted by Memorial on October 2, 1974.

After his resignation, petitioner attempted unsuccessfully to find employment which would allow him to remain in Newfoundland after he fulfilled his teaching commitments at Memorial. He mentioned to friends that he hoped to settle permanently in Newfoundland. He approached, among others, the Canadian Employment Services and Oxfam Canada, the humanitarian organization in which he was active. He also submitted his resume in response to an inquiry from the Atlantic Planning Committee. He did not succeed in finding a job. Without a permanent job, his visa could not be renewed.

During 1973 and 1974, petitioner filed Canadian income tax returns and paid Canadian income taxes.

In March 1975, petitioner had a conversation with D. W. Rose of Revenue Canada, Taxation—Income Tax, in which he learned that he would be eligible for exemption from Canadian income tax on his remuneration from teaching for the years 1973 and 1974 as a visiting professor under the provisions of the United States-Canada Income Tax Convention[2] if he left Canada within 2 years of the date of his initial entry. Petitioner was given a copy of an Interpretation Bulletin, IT–68, dealing with treaty exemptions for visiting professors, and various other pamphlets.[3]

---

[2] See n. 8 *infra.*

[3] This Interpretation Bulletin was issued by the Canadian Department of National Revenue, Taxation, on Sept. 13, 1972, and is quoted at n. 11 *infra.*

Petitioner had previously been aware of the existence of such exemption but thought that his original intention to remain in Canada in excess of 2 years made him ineligible for it. Thereafter, he wrote a letter to the dean of arts at Memorial on April 7, 1975, expressing his intention to leave St. John's on April 21, 1975, and stating that his winter semester course work, his departmental responsibilities, and his committee work would be completed by that date. On April 14, 1975, he wrote to D. W. Rose stating in relevant part:

> Per our conversation last month, I am applying for exemption from Income Tax for the years 1973 and 1974, under the "Visiting Professor Interpretation Bulletin" (I–68) [sic]. I will be leaving St. John's on April 22, 1975, and expect to cross from Canada into the U.S. on April 25, 1975. As I entered Canada on April 26, 1973, and took up my post at Memorial University on April 30, 1973, this seems to be within the two-year period specified by the terms of the Tax Treaty.
>
> However, I should also mention that although I have no further obligations to the university, I will continue to draw my unpaid salary (approximately $4000) from Memorial University until August 31, 1975. Thus, *while no longer being resident in Canada,* I will continue to be paid from Canadian sources. I am still not certain as to how I should file my 1975 return. [Emphasis added.]

Petitioner received a reply to his letter, dated May 5, 1975, stating in part:

> Dear Sir:
> This will acknowledge your letter of April 14, 1975.
> Based on the information submitted, your 1973 and 1974 Income Tax Returns will be re-assessed to allow you tax exemption as a visiting Professor. Notices of Re-assessment and applicable refunds will be issued as soon as possible.
>
>     \*    \*    \*    \*    \*    \*    \*
>
> Yours truly,
> (S)R. Murray
> for Chief of Verification & Collections Dept. of National Revenue, Taxation

Notices of reassessment for the years 1973 and 1974 were mailed to petitioner by Revenue Canada, Taxation, on June 27, 1975, and petitioner received refunds of Canadian income taxes in the amounts of $1,602.73 and $2,582.86 for the taxable years of 1973 and 1974, respectively. These amounts included refunds of petitioner's Canadian pension plan contributions and interest adjustments of $90 and $94.46, respectively, in 1973, and $106.20 and $39.26, respectively, in 1974.

Petitioner's income for the last 4 months of his 28-month

employment contract, as well as accumulated benefits repaid to him by Memorial in 1975, were taxed by Canada.

Petitioner crossed from Canada into the United States on April 25, 1975. Petitioner lived in his parents' house immediately following his return to the United States, since he had no other place to go. He had not lived in his parents' house nor left his possessions there since the time he was married. Petitioner did not maintain a home in the United States during 1973 and 1974.

Petitioner went to Canada in good faith and not for the purpose of tax evasion.

Between the date of his initial entry into Canada, April 26, 1973, and his departure on April 25, 1975, petitioner entered the United States 4 times to visit his family or attend scholarly meetings, remaining slightly over 1 month in June and July of 1974 and 2 to 3 days on his other three trips.

Petitioner was not physically present in Canada during 510 days in any period of 18 consecutive months between April 26, 1973, and April 25, 1975.

Petitioner applied for and received unemployment benefits from Canada in 1976, based on his employment there in 1973 through 1975.

Petitioner paid the total amounts of $2,509, in 1973, and $3,239, in 1974, for his food and lodging, while he was in Canada. Petitioner paid professional dues of $14.50 and $39, in 1973 and 1974, respectively, in connection with his employment. Petitioner made charitable donations in the amount of $125 in 1974.

## ULTIMATE FINDING OF FACT

Petitioner was a resident of Canada during the period April 26, 1973, to April 25, 1975.

## OPINION

The first issue for decision is whether petitioner was a bona fide resident of Canada during the years 1973 and 1974, and may exclude from gross income, under section 911(a)(1), his earnings in those years as an instructor at Memorial University in St. John's, Newfoundland, Canada.[4] If we agree with respondent

---

[4]During the taxable years at issue, sec. 911(a)(1) provided:

SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES.

that petitioner was not a resident of Canada during the years in question, we must also decide whether he was "away from home" for the purposes of section 162(a)(2), so that he may deduct his food and lodging expenses while in Canada.

Whether a citizen of the United States is a bona fide resident of a foreign country for purposes of section 911(a)(1) generally requires an analysis of all relevant facts and circumstances, applying, to the extent feasible, the principles of section 871 and the regulations thereunder[5] relating to what constitutes residence in the United States in the case of an alien individual. *Craig v. Commissioner*, 73 T.C. 1034 (1980); *Benfer v. Commissioner*, 45 T.C. 277, 291 (1965); sec. 1.911–2(a)(2), Income Tax Regs. However, we need not engage in a detailed analysis of whether the various elements in petitioner's situation would suffice to constitute him a resident of Canada for the purposes of section 911(a)(1) generally, although we are satisfied that on balance this would be the case. Respondent has not posited his attack on such an analysis.[6] Rather, he has confined his

---

(a) GENERAL RULE.—The following items shall not be included in gross income and shall be exempt from taxation under this subtitle:

(1) BONA FIDE RESIDENT OF FOREIGN COUNTRY.—In the case of an individual citizen of the United States who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such uninterrupted period. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c).

Petitioner's earned income from foreign sources did not, in either year, exceed the limitations on the amount of exclusion set forth in sec. 911(c)(1). For taxable years beginning after December 31, 1978 (see Pub. L. 95–615, sec. 209(a) and (c), 92 Stat. 3097, 3109 (1978)), sec. 911(a) has been limited in its application to individuals residing in camps located in hardship areas. Pub. L. 95–615, *supra*, sec. 202(a)(f)(1), 92 Stat. at 3098.

The parties agree that petitioner did not satisfy the requirement of sec. 911(a)(2) of presence in a foreign country of at least 510 full days during an 18-month period and that petitioner is, therefore, not entitled to an exclusion thereunder.

[5]Sec. 1.871–2(b), Income Tax Regs.

[6]We have made detailed findings of fact, which, in our judgment, show that petitioner's life was completely integrated into that of the Canadian community in which he lived, and that his return to the United States in 1975 rested, not upon the resumption of U.S. residency which he never abandoned, but on the occurrence of unanticipated subsequent events related primarily to the facts that his teaching career did not materialize, and that his inability to find other employment in Canada caused him to abandon his residence in Canada and establish anew his U.S. residency. These findings of fact fit the various factors set forth in *Sochurek v. Commissioner*, 300 F.2d 34, 38 (7th Cir. 1962), revg. 36 T.C. 131 (1961), factors which we accepted in *Dawson v. Commissioner*, 59 T.C. 264, 268 n. 4 (1972), and confirm our ultimate finding of fact that petitioner was a resident of Canada during the critical period. In making our analysis, and in reaching our conclusions as aforesaid, we have taken into account, not only

argument to the impact of subparagraph (6) of section 911(c), which provides a special rule for the determination of residency,[7] and the impact of article VIII A of the United States-Canada Income Tax Convention and petitioner's actions thereunder.[8] Essentially, respondent's position is that, when petitioner applied in 1975 for an exemption under article VIII A from Canadian income taxes on his earnings from teaching in Canada and received a refund of such taxes, petitioner, either explicitly or implicitly, made a statement to the Canadian authorities that he was not a resident of Canada and is therefore precluded by subparagraph (6) of section 911(c) from claiming that he was a bona fide resident of Canada for the purposes of section 911(a)(1). Respondent augments his position by arguing that article VIII A creates a presumption that a teacher visiting Canada for 2 years is not a resident of that country and that, by claiming the benefits of that article, petitioner is deprived of the benefit of section 911(a)(1). In taking this latter position, respondent does not refer to section 911(c)(6) and seems to be taking the position that, even if such section were not in the Code, claiming and receiving the benefits of article VIII A would in and of itself deprive petitioner of the right to claim nonresident status under section 911(a)(1). In our opinion, respondent is engaging in semantical sleight of hand. The fact is that section 911(c)(6) is in the Code and that it was put there for a specific purpose, which was to deal with situations such as that involved herein. We therefore treat respondent's two arguments

---

the fact that the petitioner has the burden of proof, but also the fact that sec. 911(a)(1) contains the phrase, "to the satisfaction of the Secretary or his delegate." See *Sochurek v. Commissioner, supra* at 37; *Nold v. Commissioner*, T.C. Memo. 1967–171; *Sherman v. Commissioner*, T.C. Memo. 1965–126.

[7]The text of subpar. (6) is as follows:

(6) TEST OF BONA FIDE RESIDENCE.—A statement by an individual who has earned income from sources within a foreign country to the authorities of that country that he is not a resident of that country, if he is held not subject as a resident of that country to the income tax of that country by its authorities with respect to such earnings, shall be conclusive evidence with respect to such earnings that he is not a bona fide resident of that country for purposes of subsection (a)(1).

[8]The text of art. VIII A, which was added to the convention on June 12, 1950, effective Jan. 1, 1951 (2 U.S.T. 2235, T.I.A.S. 2347), 1955–1 C.B. 624, 626, is as follows:

"A professor or teacher who is a resident of one of the contracting States and who temporarily visits the other contracting State for the purpose of teaching, for a period not exceeding two years, at a university, college, school or other educational institution in such other State, shall be exempted by such other State from tax on his remuneration for such teaching for such period."

as simply variations of a single section 911(c)(6) theme. See also note 6 *supra*. For the reasons hereinafter set forth, we disagree with respondent and hold for petitioner.

At the outset, we stress that, under the test of bona fide residence set forth in section 911(c)(6), an individual is not precluded from obtaining the benefit of section 911(a)(1) merely because he was not taxed as a resident of a foreign country on income earned within that country. The crucial factor is whether, in addition to being exempt from foreign income tax, an individual has made a statement to foreign authorities which would be inconsistent with a claim that he was a resident of that foreign country for purposes of section 911(a)(1). The legislative history shows that Congress, in enacting section 911(c)(6), recognized that certain individuals would continue to obtain the benefits of section 911(a)(1), although their earnings were also exempt from foreign tax. Yet Congress sought to eliminate that possibility only where an individual is "avoiding income tax in the United States and the foreign country by taking inconsistent positions with respect to residence in the two countries" and "not [to] deny an individual an exclusion as a bona fide resident if, under wholly consistent positions with respect to residence in the United States and a foreign country, he is held by both countries to be a nonresident." S. Rept. 1881, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 707, 781, 783. See also Conf. Rept. 2508, 87th Cong., 2d Sess. (1962), 1962-3 C.B. 1129, 1156. Consequently, as respondent himself has acknowledged, section 911(c)(6) does not deny to a taxpayer the section 911(a)(1) exclusion merely because an individual is exempt from foreign tax on his earnings under the provisions of a treaty. *Scott v. United States*, 193 Ct. Cl. 27, 432 F.2d 1388, 1399 (1970) (involving exemption from tax as a result of a U.N. convention); Rev. Rul. 72-497, 1972-2 C.B. 448.

The question before us is whether petitioner's actions to secure the benefits of article VIII A of the United States-Canada Income Tax Convention were sufficient to bring section 911(c)(6) into play, i.e., did those actions amount to "a *statement* to the authorities [of Canada] that he *is* not a resident of [Canada]"? (Emphasis added.) We find no indication in the record that petitioner ever made an explicit statement to the effect that during 1973 and 1974 he was a nonresident of Canada. His letter of April 14, 1975, to Mr. Rose of Revenue

Canada, Taxation, applying for the article VIII A exemption (see p. 418 *supra*), indicates merely that he was leaving Canada within 2 years of entering that country for the purpose of teaching, and petitioner testified that, after his conversation with Mr. Rose earlier in that month, he believed this to be the only representation that he was required to make in order to obtain the exemption from Canadian income tax on his 1973 and 1974 earnings from teaching in Canada. If we were to infer any representation as to petitioner's residency from this letter, we would conclude that petitioner was, at most, stating that he had been a resident of Canada during the taxable years at issue because he says in the letter that, after departing from Canada in 1975, *"while no longer being resident in Canada,* I will continue to be paid from Canadian sources." (Emphasis added.)

Respondent maintains, however, that where a taxpayer affirmatively seeks an exemption from foreign tax, the availability of which is conditioned upon the taxpayer being a nonresident of the foreign country, the taxpayer implicitly makes a statement for the purposes of subsection 911(c)(6) that he is not a resident of that country. Respondent distinguishes the instant case from *Scott* on the grounds that article VIII A, unlike the treaty exemption at issue in *Scott,* is conditioned upon residency, and an affirmative request for exemption was made by petitioner herein under that article. More particularly, respondent contends that the article VIII A exemption is available only to nonresidents of Canada; that the definition of residency under Canadian law is sufficiently similar to its definition for purposes of section 911(a)(1) so that a claim of exemption from Canadian income tax under article VIII A was a position inconsistent with a claim of bona fide residency in Canada under section 911(a)(1); and that, whether or not petitioner knew of this limitation, his application for exemption under article VIII A was implicitly a representation that he met all of its conditions and it was, therefore, a statement of nonresidency.

After a review of the relevant authorities and of the manner in which the article VIII A exemption was applied to petitioner by Canada, we are convinced that nonresidency in Canada is not a prerequisite to obtaining an article VIII A exemption from Canadian income tax, and that seeking such exemption, therefore, does not necessarily carry with it a representation of nonresidency in Canada by the visiting teacher.

The term "resident" is not defined in the United States-Canada Income Tax Convention. Just as we have found it unnecessary to delve into the various facts and circumstances which influence the general determination by U.S. authorities as to the country of residence of a taxpayer for the purposes of section 911(a)(1), so we find it unnecessary to make any such analysis with respect to such facts and circumstances as influence a general determination of who is a "resident" of Canada by Canadian authorities.[9] We are concerned, in this case, with the impact in Canada of article VIII A of the United States-Canada Income Tax Convention exempting visiting teachers, and we are fortunate in having available sufficient indications of how the Canadian authorities treat the problem of residency of a person claiming the benefits of such an exemption.

In *Minister of National Revenue v. Stickel*, 74 D.T.C. 6268 (1974), affg. 73 D.T.C. 5178 (1973), the Supreme Court of Canada agreed with the reasoning of, and upheld a decision by, the Federal Court of Appeal that "resident" in the context of article VIII A has a special, limited meaning. In that case, Stickel came to Canada to teach at the University of Alberta under a 2-year contract. At the expiration of the contract, Stickel ceased teaching, but remained in Canada doing other work. After deciding that the article VIII A exemption was applicable so long as the period of teaching, as opposed to the length of stay, did not extend beyond 2 years, the Federal Court of Appeal was faced with the questions of whether Stickel was "temporarily" visiting Canada, and whether he was "a resident" of the United States for purposes of article VIII A.[10]

It first decided that because the phrase "temporarily visits" had to be defined to include periods as long as 2 years, Stickel's

---

[9]We note that, in determining residence generally for Canadian income tax purposes, common law principles similar to those expressed in sec. 1.871–2(b), Income Tax Regs., are employed, but additionally, a person who "sojourned in Canada in the year for a period of, or periods the aggregate of which is, 183 days or more" is deemed to be a resident of Canada. Income Tax Act (Canada) sec. 250(1)(a); G. McGregor, "Deemed Residence," 22 Can. Tax J. 381 (1974); L. Smith, "Canadian-U.S. Personnel Movements and Taxes," 10 Can. Tax J. 337 (1962). See also *Adams v. Commissioner*, 46 T.C. 352, 362 n. 12 (1966), and materials cited therein.

[10]These questions were not reached by the trial court which had decided against Stickel on the ground that his stay in Canada exceeded 2 years. *Stickel v. Minister of National Revenue*, 27 D.L.R.3d 721, 72 D.T.C. 6178 (F.C.T.D. 1972).

stay in Canada was temporary, even though he and his family came to Canada with the understanding that during the 2-year period of his contract, they might consider the possibility of making Canada their permanent home.

It then rejected the Minister of National Revenue's position that the phrase "a resident" of the United States as used in article VIII A "contemplates residence in the sense given to that word when it is a basis for liability to income tax and that it is a condition of the Article that a person must have been so resident throughout the period of the exemption."

As we read *Stickel*, the Supreme Court of Canada and the Federal Court of Appeal did not consider residency "at the time contemplated by Article VIII A," 73 D.T.C. at 5179, to depend upon Stickel's circumstances and intentions during the years for which he sought the exemption and did not evaluate those circumstances according to the criteria usually applied in a determination of residency, i.e., familial, cultural, and social ties. See 73 D.T.C. at 5180; 74 D.T.C. at 6269. Instead, both courts interpreted "resident" of the United States as used in article VIII A to mean no more than that, prior to his entrance into Canada for purposes of teaching, the visiting teacher's ordinary place of residence was the United States. Being a "resident" of the United States in that very limited sense is, in no way, inconsistent with being a resident of Canada under Canadian income tax law as generally applied or under U.S. income tax law. Cf. *Maclean v. Commissioner*, 73 T.C. 1045, 1053 n.9 (1980); *Adams v. Commissioner*, 46 T.C. 352, 358 (1966).

Our conclusion in this regard is not affected by the use of the phrase "temporarily visits" in article VIII A because the *Stickel* case indicates that a teacher may be considered to be temporarily visiting Canada even if his intentions as to the duration of his stay are of an indefinite nature, such as is usually associated with residency. See and compare sec. 1.871–2(b), Income Tax Regs., which provides that an alien "who comes to the United States for a definite purpose * * * of such a nature that an extended stay may be necessary for its accomplishment, and to that end * * * *makes his home temporarily in the United States* * * * *becomes a resident,* though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned." (Emphasis added.)

Decisions subsequent to *Stickel* confirm our conclusion that the Canadian judicial interpretation of article VIII A looks only to the residence of the taxpayer at the time he enters Canada, and that subsequent facts relating to residence are irrelevant— the only point of dispute seems to be the impact of remaining in Canada *and* engaging in teaching employment after the 2-year period has elapsed. *The Queen v. Hunt,* 77 D.T.C. 5404 (F.C.T.D. 1977); *Wyatt v. Minister of National Revenue,* 75 D.T.C. 72 (Tax Review Board 1975); *Shihadeh v. Minister of National Revenue,* 75 D.T.C. 74 (Tax Rev. Bd. 1975). See also *The Queen v. Reeder,* 75 D.T.C. 5160 (F.C.T.D. 1975). But see *Erickson v. Minister of National Revenue,* 80 D.T.C. 1118 (Tax Rev. Bd. 1980).

The manner in which the administrative determination was made as to whether petitioner's visit was sufficiently temporary to qualify for the exemption, as testified to by petitioner and set forth in Interpretation Bulletin IT–68, Canadian Department of National Revenue, Taxation, September 13, 1972,[11] to which petitioner was referred, also shows that petitioner's intentions during the taxable years at issue as to the duration of his stay in Canada were not relevant. Compliance with the requirement of temporariness was judged, at the time his stay terminated, by the actual duration of his stay rather than an investigation of his original intentions. See Interpretation Bulletin IT–68, par. 5, note 11 *supra.*[12] Thus, petitioner was not ineligible for the

---

[11]Interpretation Bulletin IT–68, Canadian Department of Revenue, Taxation, Sept. 13, 1972, provides in relevant part:

3. Income tax agreements and conventions provide, on a reciprocal basis, that a teacher who comes to Canada temporarily, for a period not exceeding two years, for the purpose of teaching at an educational institution, is exempt from Canadian income tax on his remuneration earned from such teaching duties in Canada.

4. To qualify for the exemption from Canadian income tax and CPP [Canada Pension Plan] contributions a teacher must prove that he meets the following tests,

(a) the duration of his temporary visit must be for a period not exceeding two years, and

(b) the visit must be for the purpose of teaching at an educational institution.

5. It is only possible to prove compliance with these tests after the teacher has terminated his temporary stay in Canada and his right to exemption from Canadian income tax and CPP contributions will only arise at that time.

6. A teacher is therefore liable to Canadian income tax and to CPP contributions on his income earned during his stay in Canada and is also required to file T1 returns for such income.

7. When a teacher, after terminating his stay in Canada, satisfies this Department that he has met the tests in 4 above he will receive a refund of the Canadian income tax he has paid and the CPP contributions he has made on the remuneration he received for his teaching duties in Canada.

[12]Interpretation Bulletin IT–68, which was given to petitioner in March 1975, and on the basis

exemption even though he had intended to stay in Canada for more than 2 years, when his stay was terminated prematurely by circumstances beyond his control.

Although we recognize that the circumstances surrounding other income tax treaties which contain provisions dealing with the same subject matter as article VIII A are not directly applicable to the situation before us, we think that what has happened with respect to such other treaties does have some significance herein. Comparable provisions dealing with teachers in more recent such treaties refer to an "individual who is a resident of one of the Contracting States at the beginning of his visit to the other." See, e.g., United States-Japan Income Tax Convention, signed March 8, 1971, 23 U.S.T. 967, T.I.A.S. 7365, art. 19; United States-Finland Income Tax Convention, signed March 6, 1970, 22 U.S.T. 40, T.I.A.S. 7042, art. 20.

The United States-Japan Income Tax Conventions provide an interesting illustration. In the original United States-Japan Income Tax Convention, signed April 16, 1954, 6 U.S.T. 149, T.I.A.S. 3176, art. XI (dealing with teachers), the relevant terminology "resident * * * who * * * temporarily visits" was indentical to that of the United States-Canada Income Tax Convention. This treaty was superseded by the United States-Japan Income Tax Convention, signed March 8, 1971, *supra*, in which the relevant provision (art. 19) refers to "An individual [w]ho is a resident of a Contracting State *at the beginning of his visit* to the other Contracting State * * * and who * * * is temporarily present in that other Contracting State."[13] (Empha-

---

of which he was advised to leave Canada within 2 years of his entry, was already outdated at that time, having been replaced by IT–68R, issued Feb. 10, 1975, which takes into account the decision in *Minister of National Revenue v. Stickel*, 74 D.T.C. 6268 (1974), affg. 73 D.T.C. 5178 (1973), by providing that, for teachers from certain countries, including the United States, only the teaching period, not the duration of stay, must not exceed 2 years. But, again, whether the 2-year limit is met is determined by time elapsed when the teaching period terminates, not by the teacher's intentions during that period. We also note that another outdated pamphlet (March 1969) which was furnished to petitioner in March 1975 contained the following:

"IF A TEACHER WHO ORIGINALLY INTENDED TO STAY PERMANENTLY IN CANADA RETURNS TO HIS OWN COUNTRY WITHIN THE PERIOD OF 24 CONSECUTIVE MONTHS, MAY HE CLAIM A REFUND FOR CANADA PENSION PLAN CONTRIBUTIONS AND INCOME TAX DEDUCTIONS?

"Yes, he may. The claim for refund must be made in writing within four years from the end of the teacher's last taxation year in Canada. [Emphasis added.]"

[13]Art. 19 contains additional conditions, not relevant herein, as did art. XI of the United States-Japan Income Tax Convention, signed Apr. 16, 1954.

sis added.) The Treasury Department's Technical Explanation of the convention explains this change of language as merely clarifying, and not altering, in this regard, the meaning of the original provision:

> This article substantially follows the rules contained in the 1954 Convention. * * * *Since the period of temporary visit may be of such duration that an individual may lose his status as a resident of the State of which he was a resident, the article makes clear that the individual need only be a resident of such State* * * * *at the beginning of his visit.* [Technical Explanation of the United States-Japan Income Tax Convention, 1973–1 C.B. 653, 665–666. Emphasis added.]

Compare United States-Iceland Income Tax Convention, signed May 7, 1975, art. 21, 26 U.S.T. 2004, T.I.A.S. 8151, which refers to "a resident of one of the Contracting States." The Treasury Department's Technical Explanation of that convention states that "Since a temporary visit may be of such a duration that an individual may lose his status as a resident of the Contracting State of which he was a resident at the time he became eligible for the benefits of this article, the individual need only be a resident of such Contracting State at the beginning of his visit." Technical Explanation of the United States-Iceland Income Tax Convention, 1976–1 C.B. 456, 467.

The foregoing analysis of the provisions of other tax treaties stands in sharp contrast to respondent's reliance on his regulations promulgated under other provisions of still other income tax treaties. For example, 26 C.F.R. sec. 509.115, T.D. 6149, 1955–2 C.B. 814, 831, dealing with article XII of the United States-Switzerland Income Tax Convention, May 24, 1951, 2 U.S.T. 1751, T.I.A.S. 2316, which is in all essential respects equivalent to the article at issue herein, provides:

> (d) *Nonresidence presumed.*—An individual who otherwise qualifies for the exemption from United States tax granted by Article XII shall, for a period of not more than two years immediately succeeding the date of his arrival within the United States for the purpose of such teaching, be deemed to have the tax status of a nonresident alien in the absence of proof of his intention to remain indefinitely in the United States. See section 871 of the Internal Revenue Code of 1954 and the regulations thereunder.

See also United States-Denmark Income Tax Convention, May 6, 1948, 62 Stat. 1730, T.I.A.S. 1854, 26 C.F.R. sec. 521.114, T.D. 5777, sec. 7.963, 1950–1 C.B. 76, 90. We find it unnecessary to dwell upon the impact of these regulations because (1) no such

specific regulations have been promulgated in respect of article VIII A of the United States-Canada Convention, (2) the regulations antedate the provisions of the United States-Japan and United States-Iceland Conventions with their accompanying Treasury explanations, and (3) they deal with the manner in which the United States treats residents of the particular countries involved who come to the United States to teach. In this latter connection, we note that the fact that, under such regulations, respondent may treat visiting alien teachers more leniently than the treaty language might require (see F. Joseph, "Income Tax Treaties—A Comparison of Basic Provisions," 12 N.Y.U. Tax Inst. 787, 807–809 (1954)) is not our concern herein.[14] The resolution of the issue before us turns, not on respondent's treatment of alien teachers in the United States, but on the impact of petitioner's actions in respect of article VIII A as reflected in their treatment by the Canadian authorities under Canadian law. See and compare *Simenon v. Commissioner*, 44 T.C. 820, 833–837 (1965).

We recognize that respondent has taken the position, in respect of treaty provisions comparable to article VIII A of the United States-Canada Income Tax Convention, that the exemption terminates if the visiting teacher becomes a resident of the United States before the termination of the permissible teaching period, although he recognizes that the exemption applies to income earned prior to the date that the taxpayer acquired U.S. residence. See Rev. Rul. 69–236, 1969–1 C.B. 193. Much of what we have said concerning respondent's attempt to rely by analogy upon the presumption created by the regulations under other treaties is equally applicable to respondent's position as set forth in that ruling.[15]

In sum, we are of the opinion that, irrespective of the

---

[14]It is interesting to note that the presumption of nonresidence was intended to *benefit* the visiting alien teacher (see F. Joseph, above), whereas respondent seeks to apply the article at issue herein to the *detriment* of petitioner—a technique which smacks of mixing apples and pears.

[15]To the extent that respondent takes the position that his claimed presumption is rebuttable rather than conclusive, he has made no attempt to analyze the facts pertaining to petitioner's Canadian residence in order to determine whether such presumption has been rebutted, which we have concluded has in fact occurred. See p. 420 *supra*, and particularly n. 6. Respondent's attempt to create a presumption by virtue of art. VIII A appears to be an attempt to restore some vitality to Rev. Rul. 68–553, 1968–2 C.B. 311, and Rev. Rul. 69–449, 1969–2 C.B. 155, which held that exemption from income tax of a foreign country as a nonresident under certain

existence in other situations of a possible presumption arising from article VIII A of the United States-Canada Income Tax Convention, petitioner's actions in claiming an exemption under that article did no more than indicate that, in 1975, after the lapse of a 2-year period, he utilized his change of status as a resident of Canada which he had previously acquired to obtain a refund of Canadian taxes under the applicable Canadian law. In this context, he did not make "a statement * * * to the authorities [of Canada] that he [was] not a resident of [Canada]" within the meaning of section 911(c)(6). Consequently, we are satisfied that petitioner's actions did not rise to the level of "taking inconsistent positions with respect to residence in the two countries." See S. Rept. 1881, *supra,* 1962-3 C.B. at 781. Cf. *Scott v. United States, supra.*

We conclude that petitioner was a bona fide resident of Canada during the taxable years at issue and was entitled to exclude from gross income under subsection 911(a)(1) his income earned from Canadian sources.

Because of this conclusion, we need not consider the issue of whether the costs of petitioner's lodging and meals in Canada were deductible as business expenses incurred while away from home.

*Decision will be entered for the petitioner.*

---

international agreements was the equivalent of a statement of nonresidency under sec. 911(c)(6), and which were rejected in *Scott v. United States,* 193 Ct. Cl. 27, 432 F.2d 1388 (1970), and superseded by Rev. Rul. 72-497, 1972-2 C.B. 448.