KURT VAN YOST, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Yost v. Commissioner
Docket No. 12789-80.
United States Tax Court
T.C. Memo 1982-516; 1982 Tax Ct. Memo LEXIS 226; 44 T.C.M. (CCH) 1071; T.C.M. (RIA) 82516; September 13, 1982. *226 From October 4, 1973 until late 1976, petitioner was assigned to an offshore drilling rig anchored outside the territorial waters of Singapore. Petitioner worked 2 out of every 3 weeks during this period. He spent his free time in Singapore, where he leased an apartment. In December 1976, petitioner was transferred to Malta, where he again took up lodgings. Petitioner remained in Malta until the early part of 1979. During 1975 and 1976, petitioner returned to the United States three times. Held, petitioner has established by "strong proof" that he was a bona fide resident of a foreign country for the 1975 and 1976 taxable years. *227 Robert E. Glaser and Brian W. Fitzsimons, for the petitioner. Kristine A. Roth, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated March 26, 1980 respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1975 and 1976 in the amounts of $6,141.50 and $3,761, respectively. After concessions, the sole issue for decision is whether petitioner was a bona fide resident of a foreign country or countries for the taxable years 1975 and 1976 for purposes of the income exclusion provision of section 911(a)(1), I.R.C. 1954. FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner resided *228 in Huron, Ohio at the time of filing the petition herein. He filed individual Federal income tax returns for the taxable years 1975 and 1976 with the Internal Revenue Service Center, Philadelphia, Pennsylvania. After graduating from the United States Merchant Marine Academy in 1973, petitioner accepted employment as a third mate with Offshore International, S.A. (hereinafter Offshore), a Panamanian corporation and a subsidiary of Offshore Company of Houston, Texas pursuant to a written agreement signed by petitioner on October 1, 1973. Shortly thereafter he was assigned to an offshore drilling rig anchored outside of the territorial waters of Singapore.Pursuant to that assignment, he arrived in Singapore on October 4, 1973. [1]
Upon arriving petitioner asked for, and received, a vistor's visa per the instructions of Offshore. Petitioner continued to use a vistor's visa to, and including, the years in issue. Offshore paid for petitioner's accommodations during his first week in Singapore, but thereafter it was his responsibility to *229 arrange for his own lodging. On October 14, 1973 petitioner moved into a two-story duplex in Singapore with a fellow Offshore employee. His tenancy was subject to a 2-year lease.
For the ensuing 3 years petitioner enjoyed 1 day off for every 2 of work. This generally was structured in the form of 20 straight days of work and 10 days of rest. Petitioner worked at a drilling station on the west coast of Malaysia. He spent his free time exclusively in Singapore. Petitioner first left Singapore on January 16, 1975. After stopping briefly in Japan to witness the launching of a ship on which he was scheduled to work, petitioner flew to the United States in order to submit his application to the U.S. Coast Guard for a raise in grade to second mate [2] and to take a course that would teach him to operate a computer on the newly launched ship. Petitioner remained in the United States until February 13, 1975, at which time he returned to Singapore.
On April 13, 1975 petitioner once again departed for the United States, this time for *230 the purpose of completing 30 days' service with the Navy [3] and to take the examination for a second mate's license. Knowing that he was to be away from Singapore for a minimum of 2 months, petitioner terminated his lease arrangement in order to save the rent and stored his belongings. [4]
Petitioner first went to his parents' home in Sandusky, Ohio. He took the second mate's examination, which was administered once a month, at the first opportunity. He waited in the United States for his results, since if he failed one portion of the multi-part examination he could retake that portion within 3 months *231 without the necessity of retaking the entire examination. On May 22, petitioner was informed that he had passed the examination. He left the United States on June 1 and flew to Japan to observe the final stages of construction of the ship to which he was to be assigned. He worked every day aboard the ship until its departure from Japan on August 9, 1975. Petitioner arrived in Singapore on August 21, 1975.
Upon his arrival in Singapore, petitioner found another place of abode. The rented lodging was furnished and was otherwise similar to his prior lodging. He signed a 1-year lease and had his stored belongings delivered to his residence. For the next month, petitioner's ship was in harbor, and he spent his free time in Singapore. On September 20, 1975 petitioner left Singapore aboard his ship destined for a Burmese drilling site. Thereafter, petitioner continued to receive a week off for every 2 weeks worked. Again, he spent his free time in Singapore. Petitioner's ship left Burmese waters for a Thai drilling station on December 5 and arrived on December 7. Petitioner's work schedule remained the same until July 1976. He continued to spend all of his free time in Singapore. *232 On July 10, 1976 petitioner left Singapore for the purpose of fulfilling his 30-day Navy commitment and of upgrading his license to that of chief mate. Again, he terminated his lease in order to save rent and thereupon placed his belongings in storage. Petitioner served his Navy tour of duty in Portsmouth, New Hampshire. Thereafter, he applied for the opportunity to, and did, take the examination for a chief mate's license. After learning that he had not passed one section of the examination, petitioner retook and passed the section on the first available date. After the examination petitioner was contacted by Offshore and told to proceed to Malta instread of Singapore by reason of the fact that his ship had been transferred from Thailand to Egypt. Petitioner left the United States on November 24 and arrived in Singapore on November 26. He sold his car, motorcycle and boat, all of which had been purchased in Singapore.He kept most of the rest of his belongings. Petitioner left Singapore on December 3 and arrived in Malta on December 4. [5]
After renting a furnished apartment in Malta petitioner *233 joined his ship on December 7. From that date on, petitioner received 2 weeks off for every 2 weeks on. His time off was spent almost exclusively in Malta. This arrangement continued until January 1979, at which time petitioner terminated his employment with Offshore.He left his job because he was unable to get "underway time" necessary for the procurement of a master's license since he was employed at a stationary drilling site. Thereafter petitioner joined the American Trade and Transportation Company, where he is currently employed as a chief mate. In both Singapore and Malta petitioner rented living quarters in typical residential areas where his neighbors included nationals of the foreign country. He dated a number of Singapore citizens (ethnic Chinese or ethnic Malaysians) and steadily dated one ethnic Malaysian Singapore citizen for more than 18 months. Petitioner met his future wife, a citizen of the United Kingdom, while in Singapore and he was married in Malta. Petitioner opened savings and checking accounts both in Singapore and Malta. He obtained a driver's license in Singapore and paid auto registration and license taxes.In Singapore he purchased bedroom furniture *234 and tools used for constructing a small sailboat. Additionally, he joined a local swimming club in Singapore and a yacht club in Malta. He offered to help coach the Singapore National Swimming Team.Furthermore, he studied the Malay language throughout the time he was in Singapore even though it was only a secondary language of the country and not necessary for day-to-day living. He purchased a total of 3 automobiles, a motorcycle, and a boat while in Singapore. Petitioner was responsible for his day-to-day living expenses and purchased his goods in the local economy while living in Singapore and Malta. While in Singapore during 1975 petitioner acquired no real estate. He had no dependents or close relatives living in Singapore. On the other hand, petitioner did not maintain a home in the United States during the period in question.Neither did he have any children or dependents in the United States. Petitioner incurred no debts while in Singapore, paying cash for all purchases made there. During the 2 years in question he maintained a U.S. savings account into which a portion of his pay was deposited directly. He also stored clothes and books in the United States. *235 At no time in 1975 did petitioner, or anyone acting on his behalf, pay income taxes to the Republic of Singapore. Petitioner received tax advice from a Singapore accountant to the effect that he did not owe income taxes to Singapore. Furthermore, his employer informed him that any foreign tax liabilities to which he would be subject would be paid of his behalf. In 1976 neither petitioner, nor a party acting on his behalf, paid income taxes to either the Republic of Singapore or the Republic of Malta. Taxes were, however, paid on his behalf to either Burma or Thailand in 1975 and 1976 and to Egypt in 1976. On his 1975 income tax return petitioner excluded $20,000 as exempt income earned abroad pursuant to section 911(a)(1). On his 1976 income tax return petitioner excluded $16,820.16, the entire amount earned from sources outside the United States, from his taxable income. In his notice of deficiency respondent disallowed the claimed exclusions on the ground that petitioner had not met the requirements of section 911(a)(1). OPINION The sole issue for decision is whether petitioner was a bona fide resident of Singapore, and, subsequently, of Malta during the taxable years *236 1975 and 1976. During the period in question section 911(a)(1) provided that a citizen of the United States, who establishes to the satisfaction of the Secretary or his delegate that he has been a bona fide resident of a foreign country for an uninterrupted period which includes an entire taxable year, may exclude from gross income earned income from sources outside the United States attributable to such period. [6]
Whether petitioner was a bona fide resident of a foreign country for purposes of section 911(a)(1) is primarily a question of fact that must be analyzed in light of all the facts and circumstances. Schoneberger v. Commissioner,74 T.C. 1016, 1023 (1980); Dawson v. Commissioner,59 T.C. 264, 268 (1972). According to section 1.911-2(a)(2), Income Tax Regs., as it read for the years at issue, the residency of an American citizen in a foreign country is determined by reference to the relevant tests prescribed for determining the residency of an alien within the United States under section *237 871. See Riley v. Commissioner,74 T.C. 414, 420 (1980); Maclean v. Commissioner,73 T.C. 1045, 1054 (1980); sec. 1.871-2(b), Income Tax Regs.
Because the statute requires that the taxpayer establish his residency "to the satisfaction of the Secretary of his delegate," petitioner must offer "strong proof" to his bona fide residency in a foreign country in order to qualify for the exclusion from gross income under section 911(a)(1). Schoneberger v. Commissioner,supra at 1024. Thus, a higher standard of proof is required than the customary preponderance of the evidence rule of Welch v. Helvering,290 U.S. 111 (1933). In Dawson v. Commissioner,supra at 268-269, we endorsed the factors enumerated by the Seventh Circuit in Sochurek v. Commissioner,300 F.2d 34, 37-38 (7th Cir. 1962), to be considered in determining whether a citizen of the United States has established his claim of bona fide residency in a foreign country. [7] All listed factors may not be relevant in every given situation; only those that are appropriate are to be weighed and considered. Additionally, the *238 residency test provided under section 871 is to be considered. [8]
*239 Based upon a careful review of the evidence presented, we find that petitioner has established by strong proof that he was a bona fide resident of Singapore for the taxable year 1975. Petitioner took up a place of abode in Singapore beginning in 1973 in order to be in close proximity to his jobsite. From October 14, 1973 until December 4, 1976 petitioner resided in an apartment leased by him in Singapore at all times that he was not required to be away from home for employment purposes or to return to the United States. The mere fact that petitioner was required to be away from home onboard a ship for approximately 2 out of 3 days during the year in question does not undermine his residency claim. See Schoneberger v. Commissioner,supra at 1025. All other absences from Singapore resulted from trips back to the United States. These trips were undertaken either to satisfy the Coast Guard requirement that an applicant for an examination to upgrade his marine officer's license make a personal application, to take his marine officer's license examinations, to fulfill his Naval Reserve training duty obligation, or to attend a computer school located in the United *240 States at the behest of his employer.When trips are dictated by such considerations, they do not militate against a claim of residency on foreign soil. See Schoneberger v. Commissioner,supra at 1206; Rose v. Commissioner,16 T.C. 232, 237 (1951); sec. 1.911-2(a)(2), Income Tax Regs.
The record demonstrates to our satisfaction that petitioner had the intention during 1975 to continue his presence in Singapore for an extended and indefinite period of time. He had no place of abode in the United States. See Lemery v. Commissioner,54 T.C. 480, 487 (1970). He opened checking and savings accounts in Singapore, purchased an automobile, a motorcycle, a boat and other durable goods there, and entered two separate leases that support his contention that he contemplated remaining in Singapore indefinitely. See Schoneberger v. Commissioner,supra at 1026; Chapman v. Commissioner,9 T.C. 619, 622 (1947). Moreover, petitioner successfully undertook an assimilation into the Singapore environment. He dated a number of ethnic Chinese or ethnic Malaysian women and steadily dated one Malaysian Singapore citizen for *241 a period of 18 months. He joined a local swimming club in Singapore and offered to help coach the Singapore National Swimming Team. He also studied the Malay language throughout his stay in Singapore. See Schoneberger v. Commissioner,supra at 1026; Weible v. United States,244 F.2d 158, 159 (9th Cir. 1957); Scott v. United States,193 Ct. Cl. 27, 42, 432 F.2d 1388, 1397-1398 (1970). Because of these factors, and because we found petitioner to be a credible and forthright witness, we believe petitioner's assertion that it was his intention to remain in Singapore for an extended and indefinite period during the entire 1975 taxable year. See Dawson v. Commissioner,supra at 268; sec. 1.871-2(b), Income Tax Regs.
Respondent points to the fact that petitioner maintained a number of connections with the United States in asserting that petitioner was not a Singapore resident. First, it is settled that an individual can be a resident of two different countries at the same time. Park v. Commissioner, 79 T.C.     (Aug. 10, 1982); Marsh v. Commissioner,68 T.C. 68, 72 (1977), affd. without *242 published opinion 588 F.2d 1350 (4th Cir. 1978). Thus, even were petitioner a resident of the United States, it would not automatically follow that he was not a resident of Singapore. Second, we do not believe that section 911(a)(1), and the case law thereunder, require that a United States citizen abandon all links to his home country in order to reap the exclusion benefits provided thereunder. Petitioner's parents, brothers and sisters lived in the United States. We do not believe that his maintenance of a savings account there is fatal to his residency claim. Contrary to petitioner's contention, the links that petitioner retained with his country of origin "indicate to us no more than petitioner may have continued to regard the United States as his domicile, which does not prevent a finding of bona fide residency in a foreign country for purposes of section 911(a)(1). Weible v. United States,244 F.2d at 163; Dawson v. Commissioner,59 T.C. at 270. " Schoneberger v. Commissioner,supra at 1028. Respondent insists that the fact that petitioner obtained only a visitor's visa during his stay in Singapore indicates *243 that he was a sojourner or transient rather than a resident of Singapore. The failure to obtain a visa is not fatal to a residency claim. See Schoneberger v. Commissioner,supra at 1027. Here, petitioner's employer told him to apply for a visitor's visa upon his entry into Singapore.Petitioner believed that this was sufficient considering the fact that he only spent 1 out of 3 days in Singapore during 1975. His failure to apply for a permanent visa is not controlling for Federal income tax purposes. [9]
Respondent also asserts that petitioner's failure to pay income taxes to Singapore is a factor weighing against his assertion of residency. While it is true that such a fact must be considered, Harvey v. Commissioner,10 T.C. 183, 189 (1948), *244 "it is not dispositive, particularly where, as here, there was no motive of tax avoidance for petitioner's choosing to live in" Singapore. See Schoneberger v. Commissioner,supra at 1028; Dawson v. Commissioner,supra at 269. We believe petitioner had no tax avoidance motive in residing in Singapore. We find that petitioner's decision to live there during 1975 was dictated by his place of employment and not by tax avoidance motives, Benfer v. Commissioner,45 T.C. 277, 293 (1965). For the same reasons set out above, we find that petitioner was a resident of Singapore during 1976 until December 4, 1976, at which time he moved to Malta. Section 911(a)(1) provides that an individual must be a bona fide resident of a foreign country or countries for "an entire taxable year." Therefore, our finding that petitioner was a resident of Singapore until December 4, 1976 does not in itself permit exclusion under section 911(a)(1) for that taxable year. In order for such exclusion to be allowed, we must find that petitioner was a resident of Malta for the remainder of the taxable year after his move from Singapore. We find that petitioner *245 intended to, and in fact did, acquire residency in Malta upon such move. The move from Singapore to Malta was required by petitioner's employment circumstances. Upon entering Malta petitioner assumed some of the same activities undertaken in Singapore. He opened a checking account, rented an apartment, joined a yacht club, and spent his free time in Malta. Petitioner continued to live in Malta until early 1979.We find that he has established by strong proof that he was a resident of Malta during the period in controversy. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. It was petitioner's understanding at the time he signed his employment contract that he was being employed for an "indefinite duration."↩
2. Such application was required to be submitted personally. Petitioner had attempted to submit it to the American Embassy but it had been refused.↩
3. As a condition of his education at the United States Merchant Marine Academy, petitioner was obligated to serve 30 days Reserve duty with the Navy for each of the 3 consecutive years following his graduation. Upon arriving in the United States in April 1975 petitioner discovered, after a number of phone calls, that all Reservists' orders had been cancelled primarily due to lack of funds. ↩
4. In each of the leases for the furnished apartments rented by petitioner, a clause was added permitting early termination in the event that petitioner was reassigned by his employer.↩
5. During his stay in Malta petitioner continued to use a visitor's visa.↩
6. Sec. 911↩ was amended by sec. 111(a) of Pub. L. 97-34, Aug. 13, 1981, 95 Stat. 190, effective for the taxable years beginning after Dec. 31, 1981.
7. These factors are as follows: (1) intention of the taxpayer; (2) establishment of his home temporarily in the foreign country for an indefinite period; (3) participation in the activities of his chosen community on social and cultural levels, identification with the daily lives of the people, and, in general, assimilation into the foreign environment; (4) physical presence in the foreign country consistent with his employment; (5) nature, extent and reasons for temporary absences from his temporary foreign home; (6) assumption of economic burdens and payment of taxes to the foreign country; (7) status of resident contrasted to that of transient or sojourner; (8) treatment accorded his income status by his employer; (9) marital status and residence of his family; (10) nature and duration of his employment; whether his assignment abroad could be promptly accomplished within a definite or specified time; and (11) good faith in making his trip abroad whether for purpose of tax evasion. ↩
8. The relevant guidelines for determining residency under sec. 871 appear in sec. 1.871-2, Income Tax Regs., which provides, in part: (b) Residence defined.↩ An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.
9. We find this case distinguishable from de la Begassiere v. Commissioner,31 T.C. 1031 (1959), affd.per curiam 272 F.2d 709↩ (5th Cir. 1959). There, we found that the taxpayer had no adequate reason for failing to obtain a permanent visa. Here, petitioner was advised only to apply for a visitor's visa and there was no compelling reason for him to alter that status.