JOHN T. LEMAY AND YVONNE P. LEMAY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lemay v. Commissioner
Docket No. 31147-85.
United States Tax Court
T.C. Memo 1987-256; 1987 Tax Ct. Memo LEXIS 255; 53 T.C.M. (CCH) 862; T.C.M. (RIA) 87256; May 19, 1987. C. Jerre Lloyd, for the petitioners. Timothy W. Burgmeier, for the respondent. SWIFT
MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: Respondent determined deficiencies in petitioners' Federal income tax liabilities for 1981 and 1982 in the amounts of $4,161 and $17,554, respectively. Some issues have been settled, and the sole remaining issue for decision is whether in 1982 petitioner John T. Lemay established a tax home and a bona fide residency in Tunisia for the purposes of the section 911 [1] foreign *257 earned income exclusion. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners John T. Lemay and Yvonne P. Lemay are husband and wife and resided in Lake Charles, Louisiana, at the time they filed their petition herein. Petitioners timely filed joint Federal income tax returns for the years in issue, and they filed an amended return for 1981. Hereinafter, all references to "petitioner" will be to John T. Lemay. Throughout 1982, petitioner was employed by the Penrod Drilling Company ("Penrod") as an assistant drilling superintendent on an offshore oil rig located in the territorial waters of Tunisia. Petitioner's work schedule consisted of alternating 28-day periods on and off duty. Petitioner would travel from his residence in Louisiana to Sfax, Tunisia, and from there to the oil rig, for a continuous work period of 28 days. Upon completion of his work period, petitioner would return to Louisiana from Sfax, Tunisia, for a continuous rest period of 28 days. Penrod paid all expenses associated *258 with petitioner's travel between Louisiana and Sfax, Tunisia. Penrod also provided petitioner's food and lodging while aboard the oil rig, and paid the Tunisian Government all taxes relating to petitioner's earnings from his employment on the rig. Petitioner usually spent the entire 28-day work period on board the rig, and he was on-call 24 hours a day during that period. Because petitioner held a supervisory position on the oil rig, however, he was permitted occasionally to travel to the mainland of Tunisia where Penrod had established an office in Sfax. On such occasions, petitioner remained in Sfax for one or two days to improve his understanding of Penrod's business operations. While in Sfax, petitioner stayed either in apartments rented by Penrod or in a hotel paid for by Penrod, and he also was provided meals at Penrod's expense. Petitioner had only limited interaction with local Tunisian residents because he did not speak the native language, although he did meet some municipal officials, participated in some informal gatherings with Tunisian employees of Penrod, and attended a local soccer match. At all times during 1982, petitioner's wife and daughter resided in the *259 house petitioner maintained in Lake Charles, Louisiana. Petitioner immediately returned directly to this residence in Louisiana upon the completion of each 28-day work period. Petitioner was registered to vote in Lake Charles, Louisiana. He maintained his only bank account in Lake Charles, and he possessed a Louisiana state driver's license. As a result of his employment in Tunisia, petitioner received a bonus equal to 25 percent of his base salary. On his and his wife's joint Federal income tax return for 1982, petitioner reported that during 1982 he was a bona fide resident of Tunisia for 209 days and claimed a foreign earned income exclusion in the amount of $42,750, equal to 57 percent of his total salary of $73,365.63 (209 days divided by 365 total days equals 57 percent). OPINION As in effect in 1982, section 911(a)(1) allowed a "qualified individual" to exclude up to $75,000 of foreign earned income from gross income. [2] A "qualified individual" is defined in section 911(d)(1) [3] as one who has a "tax home" in a foreign country and who (1) as a citizen of the United States, establishes to the satisfaction of the Secretary that he has been a "bona fide resident" of *260 a foreign country for an uninterrupted period which includes an entire taxable year, or (2) as a citizen or resident of the United States, has been physically present in a foreign country for at least 330 days during the taxable year. Sec. 911(d)(1)(A) and (B); sec. 1.911-2(a), Income Tax Regs. Petitioner concedes that he does not meet the "physical presence" test of section 911(d)(1)(B). Petitioner argues, however, that he maintained a tax home in Tunisia in 1982 and that he was a bona fide resident of Tunisia for all of 1982. *261 The term "tax home" is limited by the provisions of section 911(d)(3), as follows: Tax home. -- The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States. Section 1.911-2(b), Income Tax Regs., elaborates on the definition of "tax home" and its relationship to the taxpayer's "abode" as follows: (b) Tax home. * * * An individual shall not, however, be considered to have a tax home in a foreign country for any period for which the individual's abode is in the United States. Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean that the individual's abode is in the United States. We recently addressed the meaning of the word "abode" within the context *262 of section 911(d)(3) in Bujol v. Commissioner,T.C. Memo. 1987-230 (slip op. at 7), as follows: "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus, "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [53 T.C.M.    ,    , 56 P-H Memo T.C. par.    at   . Fn. ref. omitted.] The taxpayer in Bujol v. Commissioner,supra, also was an employee of Penrod who worked alternating 28-day periods on an offshore oil rig in foreign territorial waters, returning to his residence in Louisiana for 28-day rest periods. We held in Bujol that due to the taxpayer's strong economic, familial, and personal ties to Louisiana, his "abode" for purposes of section 911 was in the United States. We thus concluded that the taxpayer did not qualify for the foreign earned income exclusion of section 911. Petitioner *263 emphasizes that section 1.911-2(b), Income Tax Regs., provides that the maintenance of a dwelling in the United States, whether or not the dwelling is used by the taxpayer's spouse and dependents, does not necessarily mean that the taxpayer's abode is in the United States. In the instant case, however, petitioner did not merely maintain a dwelling in the United States. As in Bujol, petitioner had strong economic, familial, and personal ties to his residence in the United States. Petitioner was a resident and domiciliary of Louisiana. He spent approximately one-half of his time in Louisiana with his wife and daughter, and he returned to Louisiana upon completion of each of the 28-day work periods. On the basis of all the facts and circumstances presented to us, we hold that petitioner's abode was in the United States during the years in issue. Because petitioner's abode remained in the United States at all times during 1982, he is ineligible for the section 911 foreign earned income exclusion. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as in effect during the years in issue.↩
2. Sec. 911(a)(1) provides, in part, as follows: (a) Exclusion From Gross Income. -- At the election of a qualified individual (made separately with respect to paragraphs (1) and (2)), there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year -- (1) the foreign earned income of such individual, and * * * ↩
3. Sec. 911(d) provides, in part, as follows: (1) Qualified individual. -- The term "qualified individual" means an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period.↩