ROBERT E. AND IMA BASSETT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bassett v. Commissioner
Docket No. 30773-86.
United States Tax Court
T.C. Memo 1988-218; 1988 Tax Ct. Memo LEXIS 246; 55 T.C.M. (CCH) 867; T.C.M. (RIA) 88218; May 16, 1988
Claude T. Allen, for the petitioners. Thomas N. Thompson, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency of $ 12,238 against petitioners for the 1983 taxable year. The only issue we must decide is whether Robert Bassett (hereinafter Mr. Bassett or petitioner) was a "qualified individual" under section 911 [1] there entitling petitioners to the foreign earned income exclusion. FINDINGS OF FACT The parties have filed a stipulation of facts which is incorporated herein by this reference. Petitioners were United States citizens with a home in Texas when they filed their petition in this case. During the 1983 taxable year Mrs. Bassett resided exclusively in Texas. Mr. Bassett spent 168 days in Texas and 197 days aboard an oil rig located in the North Sea approximately 60-120 miles off the coast of Scotland. Mr. Bassett worked *249 as a tool pusher for Western Oceanic Services, Inc. during the 1983 taxable year. He was not under any employment contract. His job required him to work on a rotation schedule which generally meant working 28 continuous days outside the United States followed by approximately 28 days off duty. While on a tour of duty petitioner worked 12-hour shifts but was on call 24 hours a day. Between his tours of duty petitioner returned to Texas to be with his wife and family. Petitioner did not perform any services within the United States. Petitioners jointly owned their home in Texas. Mortgage payments on the home were made out of their jointly owned Texas bank account. Mr. Bassett also had United States credit cards and continued to maintain a Texas driver's license. Conversely, Mr. Bassett did not have any foreign bank accounts, foreign credit cards, foreign driver's license or any type of home or apartment in Scotland. Mr. Bassett did little or nothing to integrate himself into the Scottish community. With the exception of a few company parties, he spent all his time while outside the United States on the oil rig in the North Sea. While Mr. Bassett never made a declaration *250 disclaiming residency in Scotland, he also never joined any local organizations and never applied for foreign citizenship. OPINION On their 1983 Federal income tax return petitioners claimed entitlement to the foreign earned income exclusion. Section 911(a) permits certain qualified individuals to exclude foreign earned income, as defined under section 911(b), from their gross income. The only issue we must decide is whether Mr. Bassett is a "qualified individual" within the meaning of section 911(a). Section 911(d)(1) defines a qualified individual as: an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. Thus, petitioner must prove his tax home was outside the United States and he must meet the requirements of section 911(d)(1)(A) (the *251 so-called "bona fide residence test") or the requirements of section 911(d)(1)(B) (the so-called "physical presence test") to be entitled to the foreign earned income exclusion. Petitioner has conceded he cannot meet the physical presence test. Therefore, our determination is solely whether petitioner's tax home was outside the United States and whether he has met the bona fide residence test. Under section 911(d)(3) tax home means: with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States. Tax home is further defined in section 1.911-2(b), Income Tax Regs., which provides: (b) Tax home * * * an individual's tax home is considered to be located at his regular or principal (if more than one regular) place of business, or if the individual has no regular or principal place of business, then at his regular place of abode in a real and substantial sense. An individual shall not, however, be considered to have a tax home in a foreign country for any *252 period for which the individual's abode is in the United States. Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean the individual's abode is in the United States.
Petitioner does not meet the tax home requirement of section 911(d)(1) because during 1983 his abode was within the United States. [2]
In a virtually identical case [3] addressing the meaning of abode we stated: "Abode" has been variously defined as one's home, habitation, residence, domicile or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" *253 as defined for purposes of section 162(a)(2). [Footnote ref. omitted. Bujol v. Commissioner,T.C. Memo. 1987-230, 53 T.C.M. 763, 56 P-H Memo T.C. par. 87,230 at 87-1112.] [3]
In this case the facts that petitioner maintained (1) a home in Texas; (2) a Texas driver's license; (3) bank accounts at Texas banks; and (4) United States credit cards, especially in contrast with his limited connection to Scotland and/or any Scottish community, convince us that his abode was within the United States. Even if petitioner had established a tax home outside the United States within the meaning of section 911(d)(3), he still fails the bona fide residence test. Section 911(d)(5) specifies that an individual cannot be a bona fide resident of a foreign country if the individual, who has foreign earned income, submits a statement to authorities of that foreign country that his is not a resident of that country, *254 and he is held not to be subject to the income tax of that foreign country due to his nonresidency. Section 911(d)(5) is merely one way in which a taxpayer can fail to meet the bona fide residence test. Additionally, a taxpayer who does not affirmatively establish his residency in a foreign country will fail the test. A taxpayer must offer "strong proof" of bona fide residency in a foreign country to qualify for the foreign earned income exclusion under section 911(a). Schoneberger v. Commissioner,74 T.C. 1016, 1024 (1980). The determination of whether a United States citizen is a bona fide resident of a foreign country within the meaning of section 911(d)(1)(A) is primarily a factual question requiring an analysis of all relevant facts and circumstances. Dawson v. Commissioner,59 T.C. 264, 268 (1972); Harvey v. Commissioner,10 T.C. 183, 188 (1948). When making this factual determination we look, to the extent practicable, to the principles of section 871 and the regulations [4] thereunder relating to determining residency of aliens within the United States. Riley v. Commissioner,74 T.C. 414, 420 (1980); *255 Maclean v. Commissioner,73 T.C. 1045, 1054 (1980); section 1.911-2(c), Income Tax Regs.; section 1.871-2, Income Tax Regs. We also consider the following factors, originally set forth in Sochurek v. Commissioner,300 F.2d 34, 38 (7th Cir. 1962), in determining whether a United States citizen has established bona fide residency in a foreign country: (1) intention of the taxpayer; (2) temporary establishment of a home in a foreign country for an indefinite period; (3) participation in the activities of the chosen community both socially and culturally, identification with the daily lives of people and, in general assimilation with the foreign environment; (4) physical presence in the foreign country consistent with employment; (5) the nature, extent and reasons for temporary absences from the foreign home; (6) assumption of economic burdens and foreign tax obligations; (7) status as resident rather than transient or sojourner; (8) treatment accorded his income tax status by his employer; (9) marital status and residence of his family; (10) nature and duration of his employment, whether his assignment abroad could be promptly accomplished within a definite *256 or specified time; and (11) whether the trip abroad is for purposes of tax evasion. Dawson v. Commissioner, supra.
*257 Here petitioner claims his intent was to become a resident of the foreign country where the rig was located. The objective evidence contradicts petitioner's stated intent. Petitioner did almost nothing to establish his residence in Scotland; whereas, he maintained a home, bank account, credit cards and driver's license in the United States. Moreover, petitioner spent every 28 day non-working period within the United States. Petitioner has fallen far short of the strong proof required to establish bona fide residency in a foreign country. Petitioner was a resident of Texas who traveled to the location of the oil rig for 28-day rotation periods. We see no difference between petitioner and those individuals who work on oil rigs off the United States coast. Petitioner has failed to meet the requirements of section 911(d)(1)(A). Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code applicable to the 1983 taxable year. ↩
2. Since petitioner's abode was within the United States we need not address the effect of his principal place of employment being a floating oil rig. ↩
3. Bujol v. Commissioner,T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988). See also Lemay v. Commissioner,837 F.2d 681 (5th Cir. 1988), affg. T.C. Memo. 1987-256↩. 4. Section 1.871-2(b), Income Tax Regs., provides: (b) Residence defined.↩ An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.