JAMES R. and LINDA L. RICHARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Richard v. Commissioner
Docket No. 40780-86.
United States Tax Court
T.C. Memo 1988-217; 1988 Tax Ct. Memo LEXIS 245; 55 T.C.M. (CCH) 864; T.C.M. (RIA) 88217; May 16, 1988
Claude T. Allen, for the petitioners. Thomas N. Thompson, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined a deficiency of $ 6,527 against petitioners for the 1983 taxable year. The only issue we must decide is whether James R. Richard (hereinafter Mr. Richard or petitioner) was a "qualified individual" within the meaning of section 911(a)[1] thereby entitling petitioners to the foreign earned income exclusion. FINDINGS OF FACT The parties have filed a stipulation of facts which is incorporated herein by this reference. Petitioners were United States citizens with a home in Louisiana when they timely filed their petition in this case. During the 1983 taxable year Mrs. Richard and petitioners' two children resided in Louisiana. Mr. Richard spent time in Louisiana, the Sudan and on drilling rigs offshore of Tunisia and Holland. Mr. *248 Richard worked as a drilling fluids engineer for Dresser Industries. He was an employee at will. His job required him to work on a rotation schedule which generally meant working 28 continuous days outside the United States followed by approximately 28 days off duty. Between his tours of duty Mr. Richard returned to Louisiana to be with his wife and their children. Mr Richard did not perform any services within the United States. While petitioner was on his tours of duty in the Sudan he lived on the land in a trailer provided by his employer. While working off Tunisia petitioner lived on the drilling rig approximately 15 to 20 miles offshore. The drilling rig petitioner lived on while working offshore of Holland was an hour's helicopter ride from the land. During 1983 petitioners jointly owned their home in Louisiana. Mortgage payments were made either with Mr. Richard's own funds or petitioners' joint funds. Mr. Richard also maintained a valid United States driver's license and credit cards. Mr. Richard did not maintain any foreign bank accounts, foreign credit cards or foreign driver's licenses. He never maintained his own home or apartment in any foreign country. *249 While living in the Sudan and to some extent while offshore of Tunisia, Mr. Richard made some small attempts to relate to the culture and the citizens of those countries. Mr. Richard learned about and participated in certain aspects, such as deer hunting, of these African cultures. Mr. Richard also made an attempt to learn Arabic to be better able to communicate with the native Africans both at work and in his personal relations. Mr. Richard presented no evidence indicating the same level of integration while living offshore of Holland. Mr. Richard never made a declaration disclaiming residency in the Sudan, Tunisia or Holland. In fact, petitioner applied for residency in those countries where it was feasible or necessary to get work permits. However, petitioner never joined any local organizations, never filed any foreign tax returns, and never applied for citizenship in any of these countries. OPINION On their 1983 Federal income tax return petitioners claimed entitlement to the foreign earned income exclusion. Section 911(a) permits certain qualified individuals to exclude *250 foreign earned income, as defined under section 911(b), from their gross income. The only issue we must decide is whether Mr. Richard is a "qualified individual" within the meaning of section 911(a). Section 911(d)(1) defines a qualified individual as: an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. Thus, petitioner must prove his tax home was outside the United States and he must meet the requirements of section 911(d)(1)(A) (the so-called "bona fide residence test") or the requirements of section 911(d)(1)(B) (the so-called "physical presence test") to be entitled to the foreign earned income exclusion. Petitioner has conceded he cannot meet the *251 physical presence test. Therefore, our determination is solely whether petitioner's tax home was outside the United States and whether he has met the bona fide residence test. Under Section 911(d)(3) tax home means: with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States. Tax home is further defined in regulations section 1.911-2(b), Income Tax Regs., and provides: (b) Tax home * * * an individual's tax home is considered to be located at his regular or principal (if more than one regular) place of business, or if the individual has no regular or principal place of business, then at his regular place of abode in a real and substantial sense. An individual shall not, however, be considered to have a tax home in a foreign country for any period for which the individual's abode is in the United States. Temporary presence of *252 the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean the individual's abode is in the United States.
Petitioner does not meet the tax home requirement of section 911(d)(1) because during 1983 his abode was within the United States. [2]
In a virtually identical case [3] addressing the meaning of abode we stated: "Abode" has been variously defined as one's home, habitation, residence, domicile or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it clearly does not mean one's principal place of business. Thus "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax *253 home" as defined for purposes of section 162(a)(2). [Footnote ref. omitted. Bujol v. Commissioner,T.C. Memo. 1987-230, 53 T.C.M. 763, 56 P-H Memo T.C. par. 87,230 at 87-1112.] In this case the facts that petitioner maintained (1) a home in Louisiana; (2) a United States driver's license; (3) bank accounts at United States banks; and (4) United States credit cards, especially in contrast with his limited commitment to the Sudan, Tunisia and Holland convince us that his abode was within the United States. While petitioner may have made certain attempts to integrate himself within the African community, he presented no evidence indicating that his home, habitation, residence, domicile or place of dwelling was in any of these foreign countries. Petitioner presented no evidence which indicates that he remained overseas during any of his free time, or that his employer would have allowed him to stay *254 in the employees' quarters. Petitioner has not convinced us that these "foreign" locations were anything more than his place of business. Even is petitioner had established a tax home outside the United States within the meaning of section 911(d)(3), he still fails the bona fide residence test. Section 911(d)(5) specifies that an individual cannot be a bona fide resident of a foreign country if the individual, who has foreign earned income, submits a statement to authorities of that foreign country that he is not a resident of that country, and he is held not to be subject to the income tax of that foreign country due to his nonresidency. Section 911(d)(5) is merely one way in which a taxpayer can fail to meet the bona fide residence test. Additionally, a taxpayer who does not affirmatively establish his residency in a foreign country will fail the test. A taxpayer must offer "strong proof" of bona fide residency in a foreign country to qualify for the foreign earned income exclusion under section 911(a). Schoneberger v. Commissioner,74 T.C. 1016, 1024 (1980). *255 The determination of whether a United States citizen is a bona fide resident of a foreign country within the meaning of section 911(d)(1)(A) is primarily a factual question requiring an analysis of all relevant facts and circumstances. Dawson v. Commissioner,59 T.C. 264, 268 (1972); Harvey v. Commissioner,10 T.C. 183, 188 (1948). When making this factual determination we look, to the extent practicable, to the principles of section 871 and the regulations [4] thereunder relating to determining residency of aliens within the United States. Riley v. Commissioner,74 T.C. 414, 420 (1980); Maclean v. Commissioner,73 T.C. 1045, 1054 (1980); section 1.911-2(c), Income Tax Regs.; section 1.871-2, Income Tax Regs.We also consider the following factors, originally set forth in Sochurek v. Commissioner,300 F.2d 34, 38 (7th Cir. 1962), in determining whether *256 a United States citizen has established bona fide residency in a foreign country: (1) intention of the taxpayer; (2) temporary establishment of a home in a foreign country for an indefinite period; (3) participation in the activities of the chosen community both socially and culturally, identification with the daily lives of people and, in general assimilation with the foreign environment; (4) physical presence in the foreign country consistent with employment; (5) the nature, extent and reasons for temporary absences from the foreign home; (6) assumption of economic burdens and foreign tax obligations; (7) status as resident rather than transient or sojourner; (8) treatment accorded his income tax status by his employer; (9) marital status and residence of his family; (10) nature and duration of his employment, whether his assignment abroad could be promptly accomplished within a definite or specified time; and (11) whether the trip abroad is for purposes of tax evasion. Dawson v. Commissioner, supra.
*257 Here petitioner claims his intent was to become a resident of the foreign country where the rig was located. The objective evidence contradicts petitioner's stated intent. Petitioner did try to become involved, to a limited extent, in the foreign community. However, compared to petitioner's connection and ties to the United States, we do not believe petitioner can be considered a "qualified individual" within the meaning of section 911(a). Petitioner has fallen short of the strong proof required to establish bona fide residency in a foreign country. Petitioner was a resident of the United States who traveled to the location of the oil rig for 28-day rotation periods. As such, he is not entitled to the foreign earned income exclusion. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code applicable to the 1983 taxable year. ↩
2. Since petitioner's abode was within the United States we need not address the effect of his principal place of employment being a floating oil rig. ↩
3. Bujol v. Commissioner,T.C. Memo. 1987-2340, affd. without published opinion 842 F.2d 328 (5th Cir. 1988). See also Lemay v. Commissioner,837 F.2d 681 (5th Cir. 1988), affg. T.C. Memo. 1987-256↩. 4. Section 1.871-2(b), Income Tax Regs., provides: (b) Residence defined.↩ An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but, if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.