HAROLD E. HOWE AND JEAN D. HOWE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Howe v. Commissioner
Docket No. 40244-86.
United States Tax Court
T.C. Memo 1988-277; 1988 Tax Ct. Memo LEXIS 308; 55 T.C.M. (CCH) 1153; T.C.M. (RIA) 88277; June 27, 1988. Harold E. Hose, pro se. J. Craig Young, for respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in petitioners' income taxes as follows: Year
Deficiency
1982
$ 11,450.00
1983
$  5,164.65
1984
$  2,416.18
The issue for decision is whether petitioner [1] was a qualified individual under section 911(a) [2] during the years at issue for purposes of the foreign earned income exclusion. *310 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits associated therewith are incorporated herein by reference. Petitioners Harold E. and Jean D. Howe resided in Niceville, Florida, at the time of filing their petition. They filed joint individual income tax returns for the taxable years 1982, 1983 and 1984 with the Internal Revenue Service Center in Philadelphia, Pennsylvania. Petitioner was employed by the Penrod Drilling Company ("Penrod") as an electrician on an offshore drilling rig between October 1981 and October 1984. During this period the rig was located as follows: From
To
Location
October, 1981
July 9, 1983
Territorial Waters of
Indonesia
July 9, 1983
July 15, 1983
En route from
Indonesia to Singapore
July 15, 1983
December 6, 1983
Territorial Waters of
Singapore
December 6, 1983
January 29, 1984
En route from
Singapore to the
Gulf of Mexico
January 29, 1984
October, 1984
Gulf of Mexico
When the rig was moved from one location to another, whether within the territorial waters of the same country or to those of another country, *311 petitioner continued working on the rig at the new location. Petitioner preferred assignment to an overseas rig in order to receive substantial bonuses and did not care where the rig was located so long as it was in a location with "warm weather." While en route from one location to another, the rig was in international waters and was not within the territorial waters of any foreign country. Petitioner's work schedule generally consisted of alternate work and rest periods of 28 days each although some work periods lasted for more than 28 days. During work periods, petitioner lived and worked on his assigned rig, and was provided with food and lodging at Penrod's expense. The only time he spent on the mainland of Indonesia or Singapore was at airports while en route to or from his assigned rig. At the end of each work period, petitioner immediately returned to his home and family in Niceville and remained there throughout the rest period. Penrod provided petitioner with roundtrip airline tickets between Florida and the nearest airport to his assigned rig. Petitioners purchased the home in Niceville in 1980. Petitioner's wife and their two sons resided in the home throughout *312 the periods in issue. He and his wife were still residing there at the time of trial and they have no intention of living elsewhere during their lives. During 1982, 1983 and 1984, petitioner was registered to vote in Florida, had a Florida driver's license, and attended church in Niceville when he was there. His children also attended school in Florida. Petitioner never considered moving his family either to Indonesia or to Singaproe. Throughout his employment on the rig, petitioner shared the same living quarters with a rig mechanic. The quarters consisted of a small room with two beds and a desk. Another electrician lived in the room during petitioner's rest periods. Petitioner kept clothing, tools, books, a radio and other personal property in the room during both work and rest periods. Petitioner ate his meals in the rig mess hall. His entertainment on the rig consisted of reading American books and newspapers, listening to the radio and watching video tapes of movies. Most of the workers on the rig were Indonesians. By working and living in such close quarters, petitioner out of necessity associated with them but he associated primarily with the other Americans *313 working on the rig. He never formally studied the Indonesian language but learned to speak some Indonesian. Most of the Indonesians spoke some English so petitioner was able to communicate with them to some extent. Petitioner paid income tax to Indonesia in 1983 in the amount of $ 3,883.35. Petitioner received wages from Penrod and claimed a foreign earned income exclusion under section 911(a)(1) pursuant to a "bona fide resident" test of section 911(d)(1)(A) [3] for the years and in the amounts set forth below: Foreign Earned
Taxable Year
Wages
Income Exclusion
1982
$ 48,411.64
$ 40,500.00
1983
$ 46,657.93
$ 45,152,00
1984
$  6,149.26
$  6,149.26
OPINION Section 911(a)(1) permits certain qualified individuals to elect to exclude foreign earned income from their gross income. To qualify for the exclusion the taxpayer is required by section 911(d)(1) to be: an individual whose tax home is in a foreign country and *314 who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, or (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during at least 330 full days in such period. Petitioner concedes that he does not meet the "physical presence test" of section 911(d)(1)(B). Therefore, to qualify for the exclusion petitioner must prove that during each of the years in dispute his "tax home" was in a foreign country and that he was a "bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year." Section 911(d)(1)(A)). "Tax home" is defined in section 911(d)(3) as being: such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States. Respondent concedes that for purposes of section *315 162(a)(2) petitioner's tax home was in Indonesia or Singapore, the principal place of his employment, until the rig left Singapore on December 6,1983. Nevertheless under section 911(a) petitioner must still establish that his "abode" was not in the United States. With regard to the meaning of abode, section 1.911-2(b), Income Tax Regs., states: Temporary presence of the individual in the United States does not necessarily mean that the individual's abode is in the United States during that time. Maintenance of a dwelling in the United States by an individual, whether or not that dwelling is used by the individual's spouse and dependents, does not necessarily mean that the individual's abode is in the United States. In Bujol v. Commissioner,T.C. Memo. 1987-230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988), we considered the meaning of the word "abode" as used in section 911(d)(3) and stated: "Abode" has been variously defined as one's home, habitation, residence, domicile, or place of dwelling. Black's Law Dictionary 7 (5th ed. 1979). While an exact definition of "abode" depends upon the context in which the word is used, it *316 clearly does not mean one's principal place of business. Thus "abode" has a domestic rather than vocational meaning, and stands in contrast to "tax home" as defined for purposes of section 162(a)(2). [Footnote ref. omitted.] [4]
During the years in issue petitioner obviously maintained significant ties to the United States. At the beginning of each rest period he immediately returned to Niceville where his family resided in the residence purchased in 1980 and where his two sons attended school. Consequently during the years in issue he spent about 50% of his time with his family in Niceville. Furthermore, throughout these years petitioner also attended church in Niceville, had a Florida driver's license and was registered to vote there. By contrast, during these years petitioner had only minimal contact with Indonesia or Singapore. His on-duty periods were spent on the offshore rig and his only contact with the mainland was at airports en route to or from Niceville on each of his rest *317 periods. We conclude, therefore, that petitioner's abode remained in the United States during the periods in issue and consequently he does not qualify for the earned income exclusion provided by section 911. Decision will be entered for respondent.
Footnotes
1. All references to petitioner in the singular are to Harold Howe. ↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue unless otherwise indicated. ↩
3. Petitioners concede that petitioner does not qualify for a foreign earned income exclusion during the years at issue under the provisions of section 911(d)(1)(B) due to his failure to meet the "physical presence test." ↩
4. See also Lemay v. Commissioner,837 F.2d 681 (5th Cir. 1988) affg. T.C. Memo. 1987-256; Bassett v. Commissioner,T.C. Memo. 1988-218↩.