THOMAS W. MILLER and RITA M. MILLER, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Miller v. Commissioner
Docket Nos. 9881-86; 13417-86; 25644-86; 27970-86; 35355-86.
United States Tax Court
T.C. Memo 1988-397; 1988 Tax Ct. Memo LEXIS 424; 55 T.C.M. (CCH) 1717; T.C.M. (RIA) 88397; August 25, 1988. C. Jerre Lloyd, for the petitioners. Arlene A. Blume, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined deficiencies in petitioners' income tax as follows: Petitioners
Docket No.
Tax year
Amount
Miller
9881-86
1983
$  9,468.00
Britt
13417-86
1982
16,116.20
Poirrier
25644-86
1982
9,858.00
1983
10,733.00
Lemay
27970-86
1983
10,471.86
Bujol
35355-86
1983
11,155.00
The issue is whether each petitioner-husband is a "qualified individual" eligible to exclude foreign earned income from his gross income under section 911(a). [2]
The facts have been fully stipulated and are incorporated herein by this reference. For *426 convenience, and because the facts in each docket are so similar, we group together the findings of fact with respect to all the petitioners, noting briefly therein the minor differences between them. Petitioners all resided in Louisiana at the time their petitions herein were filed. In the years at issue, the husbands (sometimes hereinafter referred to collectively as petitioners or, individually, as petitioner) all worked for Penrod Drilling Company (hereinafter Penrod) on offshore oil rigs outside of the United States. Two of the petitioners, Miller and Poirrier, worked on rigs in the North Sea in the territorial waters of the Netherlands near Den Helder of that country. Two more, Britt and Lemay, worked on rigs in the Mediterranean Sea in the territorial waters of Tunisia, North Africa. [3] The last petitioner, Bujol, worked on a rig in the Persian Gulf in the territorial waters of the United Arab Emirates near Abu Dhabi. The countries in the territorial waters of which the rigs were located are sometimes hereinafter referred to as the host countries. Four of the petitioners, Miller, Britt, Poirrier, and Bujol, were employed as toolpushers. The other petitioner, Lemay, was *427 employed as a drilling superintendent. For working overseas, each petitioner received a 25 per cent bonus over the wages he would have received had he worked on a site in the continental United States. Each petitioner had a schedule which required him to work on the oil rig for extended periods of either 14, 28, or 56 days at a time alternating with rest periods of the same length. Under these schedules in the years at issue petitioners spent the following number of days outside the United States: Miller, 182; Britt, 180; Poirrier, 175 in 1982 and 190 in 1983; Lemay 124; [4] and Bujol, 197. Each spent his rest period at home in Louisiana, with the travel both home and back to the rig occurring during the rest period. For each petitioner except Britt it is stipulated that Penrod made the transportation arrangements and paid the cost of the transportation between his home and the drilling *428 site. In the years at issue, each petitioner either owned or maintained a house in Louisiana. Moreover, each had a wife and at least one child living in that home throughout the year. With the exception of Lemay's wife, petitioners' wives did not work outside the home. Each petitioner owned a car which was kept in the United States and registered in Louisiana, maintained a Louisiana driver's license, was registered to vote in that state, and maintained bank accounts there. In addition, petitioner Britt owned a royalty interest in a one acre tract of land in his home town in Louisiana, petitioner Poirrier raced his car in the Louisiana area, and petitioner Bujol held hunting and fishing licenses as a Louisiana resident. During their work periods petitioners were provided with food and living quarters on the oil rigs. Generally, petitioners spent the entire work period on the drilling rig. On the rig located in the North Sea all the employees were either American or Dutch; on the rigs in the Mediterranean and the Persian Gulf, the employees included *429 citizens of the United States, the host country, and other countries. Contact with the country in the territorial waters of which the rig was located varied amongst the petitioners depending on the location of the rig and the position that the petitioner held. Petitioners who were assigned on rigs in the territorial waters of the Netherlands were allowed an occasional day off in Den Helder. The contact of Britt, who was a toolpusher on the rig located in the Mediterranean, was limited to layovers in Sfax between flights to and from his home and the rig. Bujol's contact with the United Arab Emirates was similarly limited to layovers in Abu Dhabi. Lemay, who was a superintendent on the rig in the Mediterranean was allowed more contact with Tunisia. He occasionally visited Penrod's offices in Sfax, Tunisia, for one or two days at a time. While in Sfax on business, petitioner's interaction with Tunisians was limited, but he met with municipal officials and with Tunisian employees of Penrod and he attended a local soccer match. While in Sfax, he would stay in an apartment or a hotel provided by his employer. Four of the five petitioners, excluding Lemay, who held a supervisory *430 position, were specifically prohibited by the conditions of their employement from living onshore in the Netherlands, Tunisia, or the United Arab Emirates, and moreover were prohibited from bringing their families to live in those places or on the rig. None of the petitioners maintained a residence or a bank account onshore and none held a license to drive in the host countries. Each of the petitioners was a citizen of the United States, permitted to work on the rig under a resident visa issued by the host nation. The petitioners on rigs located in the North Sea and in the Persian Gulf did not pay taxes to the Netherlands and The United Arab Emirates, respectively. In the years before us, petitioners and their wives reported on their income tax returns earnings from Penrod and deductions or "exclusions" of foreign earned income in the following amounts: Petitioner
Year
Earnings
Exclusion
Miller
1983
$ 52,468.77
$ 40,000
Britt
1982
73,354.07
36,750
Poirrier
1982
55,809.00
[5] 35,250
1983
[6] 52,949.95
41,600
Lemay
1983
63,572.66
27,200
Bujol
1983
54,528.40
44,000
*431 In separate notices of deficiency issued to each set of petitioners, the Commissioner disallowed the full exclusion of foreign earned income on the ground that the petitioner was not a "qualified individual" because he did not meet either the "bona fide resident" test or the "physical presence" test set out in section 911(d)(1)(A) and (d)(1)(B), respectively. Section 911(a) provides for the exclusion from gross income of certain specified amounts of foreign earned income and associated housing costs of a "qualified individual". At issue here is whether each petitioner was a "qualified individual", a term that is defined in section 911(d)(1) as follows: (1) Qualified individual. -- The term "qualified individual" means an individual whose tax home is in a foreign country and who is -- (A) a citizen of the United States and establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year * * *. (B) a citizen or resident of the United States and who, during any period of 12 consecutive months, is present in a foreign country or countries during *432 at least 330 full days in such period. [Emphasis supplied.] We may readily dismiss the possibility that the petitioner can qualify under (d)(1)(B), since each petitioner has stipulated that he "was not present in any foreign country or countries for 330 days out of any twelve month period encompassing any portion of the [year or years at issue]", thus conceding his failure to meet the physical presence test of subparagraph (B). Accordingly, there remains the question whether petitioners satisfy the alternative requirements of (d)(1)(A) as persons whose "tax home" is in a foreign country and who have been bona fide "[residents] of a foreign country * * * for an uninterrupted period which includes an entire taxable year". We need not consider whether petitioners were "residents" of the respective foreign countries where their rigs were located in the years before us in view of our conclusion that they did not have a "tax home" in a foreign country. A "tax home" is defined in section 911(d)(3) as follows: (3) Tax home. -- The term "tax home" means, with respect to any individual, such individual's home for purposes of section 162(a)(2) (relating to traveling expenses while *433 away from home). An individual shall not be treated as having a tax home in a foreign country for any period for which his abode is within the United States. [Emphasis supplied.] Of critical importance in the present cases is the condition in these provisions that a taxpayer cannot have a tax home in a foreign country if his "abode is within the United States", a condition that is emphasized in the accompanying regulations. Thus, section 1.911-2(b), Income Tax Regs., although defining a tax home generally as the taxpayer's "regular or principal * * * place of business", nevertheless goes on to preclude the taxpayer from having a tax home abroad while "the individual's abode is in the United States". The statute and the regulation both subject the tax home definition to "an overriding exception that the individual's 'abode' not be in the United States". Lemay v. Commissioner,837 F.2d 681, 683 (5th Cir. 1988), affg. a Memorandum Opinion of this court. See Howe v. Commissioner,T.C. Memo. 1988-277, 55 T.C.M. 1153, 57 P-H Memo T.C. par. 88,277; Bassett v. Commissioner,T.C. Memo. 1988-218, 55 T.C.M. 867, 57 P-H Memo T.C. par. 88,218; *434 Richard v. Commissioner,T.C. Memo. 1988-217, 55 T.C.M. 864, 57 P-H Memo T.C. par. 88,217; Bujol v. Commissioner,T.C. Memo. 1987-230, 53 T.C.M. 762, 56 P-H Memo T.C. par. 87,230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988). And the word "abode" has been regarded in these cases as the place where the taxpayer maintains a home for his family, where he votes, where he has a driver's license, etc., rather than the place in which he works under rigorous conditions in isolation away from his family and friends and generally only in the company of his co-workers. Despite the clear language of the statute as thus applied, petitioners urge us to reconsider our interpretation of the "tax home" portion of the "bona fide resident" test of section 911. They argue that the foreign tax home was not meant to be additional requirement of the bona fide resident test contained in section 911(d)(1)(A). However, in the face of the unambiguous language of the statute, they have pointed to no legislative history clearly indicating any such interpretation. We adhere to the reading of section 911(d)(1)(A) that is plain from its wording and *435 which has previously been adopted both by this Court and by the Fifth Circuit. Under that interpretation, as to two of the petitioners, we have already concluded as to prior years that due to their "economic, familial, and personal ties to Louisiana" their abodes were in the United States. Lemay v. Commissioner,T.C. Memo. 1987-256, 53 T.C.M. 862, 864, 56 P-H Memo T.C. par 87,256, affd. 837 F.2d 681 (5th Cir. 1988); Bujol v. Commissioner,T.C. Memo. 1987-230, 53 T.C.M. 762, 764, 56 P-H Memo T.C. par. 87,230, affd. without published opinion 842 F.2d 328 (5th Cir. 1988). The facts with respect to those two petitioners as well as to the other three before us for the tax years involved are in no significant way distinguishable from those in the two decided cases. For the reasons stated in our opinions in those cases as well as in the Fifth Circuit opinion in Lemay, we find that the abodes of all of the petitioners here remained in the United States during the tax years that they worked on rotating schedules abroad and, for that reason, they do not have tax homes abroad. Consequently, they have not satisfied the "bona *436 fide resident" test of section 911(d)(1)(A), are not "qualified [individuals]", and are not eligible for the exclusion for "foreign earned income" of section 911(a). Decisions will be entered for the respondent.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Billy T. and Barbara J. Britt, docket No. 13417-86; Uwell Joseph Poirrier and Patricia T. Poirrier, docket No. 25644-86; John T. Lemay and Yvonne P. Lemay, docket No. 27970-86; and Robert C. Bujol and Lanya H. Bujol, docket No. 35355-86. ↩
2. Other adjustments (sales tax, medical and dental expenses) in docket No. 25644-86 result automatically from resolution of this issue. The Government has also allowed petitioners in docket No. 27920-86 a deduction for a married couple when both work. ↩
3. In the case of both the petitioners located in the North Sea and those located in the Mediterranean it is not stated whether and petitioners were on the same rig or on different rigs located in the same area, although as to the North Sea especially, it appears that they were on the same rig. ↩
4. Lemay spent only 124 days abroad in 1983 because beginning in August 1983 he started working for Penrod in the United States. ↩
5. This exclusion was claimed on an amended 1982 return. ↩
6. Although it is stipulated that Poirrier earned $ 41,600 from Penrod in 1983, the Form W-2 attached to his return shows wages in the amount of $ 52,949.95 and this amount was reported on his 1983 return. ↩